### BLACK *v.* BLACK.

GEORGE, J. 1. Under the ruling in *Ring* v. *Ring,* 118 *Ga.* 183 (44 S. E. 861, 62 L. R. A. 878), *Brown* y. *Brown,* 129 *Ga.* 247 (58 S. E. 825), and *Stoner* v. *Stoner,* 134 *Ga.* 368 (67 S. E. 1030), the evidence failed to show a case of cruel treatment which authorized the grant of a divorce on that ground. The court therefore erred in overruling the defendant's motion for new trial.

2. The verdict for permanent alimony, based as it was upon the unauthorized grant of a total divorce between the parties, will be set aside, without prejudice to the right of the plaintiff, while living in a bona

fide state of separation, to prosecute her suit for permanent alimony. *Judgment reversed. All the Justices concur, except Atkinson, J., absent.*

No. 1367. NOVEMBER 14, 1919.

Divorce and alimony. Before Judge Kent. Laurens superior court. February 6, 1919.

Mrs. Sarah Knight Black filed her petition for divorce and for temporary and permanent alimony against T. H. Black. The ground on which the divorce was sought was cruel treatment. On the trial the plaintiff testified: She had known the defendant for about five years prior to her marriage; when she was a girl eleven or twelve years old he often presented her with jewelry and other presents, and was quite kind to her. When she was about fifteen years old he proposed marriage to her. She did not immediately accept his proposal, but regarded it as a joke, and told him that he was too old to marry her; that he was old enough to be her grandfather. Finally she learned to respect him and to love him "with parental love." She married the defendant on February 22, 1917, when she was about seventeen years old. In substance the acts of cruelty charged may be given in the plaintiff's language as follows: "The second morning after we were married I tied his tie for him, and when he came back to the house it was tied in a different way, and he said Mrs.—tied it for him, and that after she tied his tie over she threw her arms around him and kissed him. . . This had a considerable effect on my mind and feeling, made me feel very badly. . . The third night after we were married he wanted to retire between six and seven o'clock, and I said I wasn't ready to go to bed, and he says, 'You little blame fool, what you think I married you for?' He says, 'You do what I say do.' " On that night "he got up about eleven o'clock and reared around, cursed me, and abused me. . . He called me a blame fool, a little devil, and a damn fool. . . He said that his children were very much dissatisfied about our marriage, and he was the same way. . . On the second Sunday he asked me if I didn't want to go down to my home. . . He went to ride with Mrs.——and Mrs.——[a daughter of the defendant and a lady friend], and rode until after night." The plaintiff was made to feel unwelcome in the home. Defendant's children would have nothing to do with her. The plaintiff suffered a great deal mentally, and cried a great deal. The defendant abused her because she had sent a boy to him to collect an account from

him. He repeatedly expressed the wish the she would return to her home; and finally, about five weeks after the marriage, "he told me to get my hat and leave; . . he says, 'I want you to leave on account of my children being dissatisfied.' He told me that he wanted me to take my hat and leave; the last time he told me this I took my hat and left. . I did not give him any cause to treat me this way. . . I separated from Mr. Black on the 24th of March, and the baby was born on the 20th of December, 1917. . . Mr. Black has never done anything for me in any way, for me or the baby either, during the time I was confined." The alleged acts of cruelty were denied by the defendant; and it was admitted that at the time of the birth of the child the defendant was paying the plaintiff twenty dollars per month as temporary alimony, under order of the court. On the trial the court submitted to the jury certain questions; and the jury found, in answer to the questions, that the plaintiff was entitled to a total divorce; that the disabilities of the defendant should be removed; that the plaintiff was entitled to alimony in the sum of $400, and the child to an allowance of twenty-five dollars per month for sixteen years, payable to the ordinary on the first of each month. The defendant's motion for new trial was overruled, and he excepted.

*W. C. Davis, W. A. Dampier,* and *Faircloth & Claxton,* for plaintiff in error. *J. S. Adams* and *R. Earl Camp,* contra.